RILEY et al. v. TOWN OF TRENTON et al.* (No. 1550.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 29, 1916. Rehearing Denied Feb. 3, 1916.)

1. MUNICIPAL CORPORATIONS ⊜═279—STATUTORY PROVISIONS—ADOPTION BY ELECTION—NECESSITY OF PETITION.

Rev. St. 1911, art. 1016, providing that the benefits of that chapter should apply to any city when the governing body shall submit the question to the voters and the majority shall vote in favor thereof, and that whenever 100 qualified voters of any city· shall petition for an election for that purpose, it shall be the duty of the governing body to order it, does not make a petition by the voters a prerequisite to the calling of the election by the governing body.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 739; Dec. Dig. ⊜═ 279.]

2. CONSTITUTIONAL LAW ⊜═63(2)—STATUTES ⊜═90(1)—MUNICIPAL CORPORATIONS—LEGISLATIVE CONTROL — ELECTION — CONSTITUTIONALITY.

Rev. St. 1911, art. 1016, authorizing cities. not incorporated under the title including that article to adopt by election the provisions of the chapter thereof relating to street improvements, is not a delegation of legislative power, and does not violate Const. art. 11, § 4, providing that cities and towns having a population of 5,000· or less may be chartered alone by general law any more than does article 1034, which provides for a vote by residents of a territory on the question of becoming incorporated, since· in both cases the law is already adopted and the vote merely brings about a condition to which by its terms the law is made applicable.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 109, 111, 112, 114; Dec. Dig. ⊜═63(2); Statutes, Cent. Dig. § 98;. Dec. Dig. ⊜═90(1).]

---

⊜═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

3. CONSTITUTIONAL LAW ⬤⟿42—PERSONS ENTITLED TO RAISE QUESTION—INTEREST.

Property owners cannot restrain a city from constructing a sidewalk in front of their premises on property which is part of the public thoroughfare because of the unconstitutionality of the statute under which the city is proceeding, since no right of theirs is being invaded.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. ⬤⟿42.]

Appeal from District Court, Fannin County.

Suit by E. J. Riley and others against the Town of Trenton and others. Judgment for the defendants, and plaintiffs appeal. Affirmed.

Cunningham & McMahon, of Bonham, for appellants. C. A. Wheeler and Rosser Thomas, both of Bonham, for appellees.

HODGES, J. The conceded facts in this case show that the town of Trenton, one of the appellees, was incorporated in 1890 under the provisions of what is now known as chapter 14 of title 22 of the Revised Civil Statutes of 1911, relating to the incorporation of towns and villages. In 1915 the board of aldermen of the town of Trenton, acting without any petition therefor, ordered an election to be held by the qualified voters to determine whether or not the town of Trenton should adopt the provisions of chapter 11 of title 22 of the Revised Civil Statutes relating to the cities and towns. An election, the regularity of which is not questioned, was accordingly held, and resulted in favor of the adoption of those provisions of the statute. The article of the statute which is relied on as authority for this action is article 1016, a part of chapter 11, and contains the following provision:

"The benefits of the provisions of this chapter shall apply to any city, and the terms thereof be extended to the same, when the governing body thereof shall submit the question of the adoption or rejection hereof to a vote of the resident property taxpayers who are qualified voters of said city at a special election called for the purpose by said city."

Then follow certain requirements as to the proceedings which shall be adopted in holding the election and making the returns. The article concludes with the following:

"Whenever the provisions of this chapter shall have been adopted by any city the governing body thereof shall have full power to pass all ordinances or resolutions necessary or proper to give full force and effect thereto and to every part thereof. Whenever one hundred qualified voters in any city shall in writing petition for an election to determine the adoption of this chapter, it shall be the duty of its governing body to order such election."

Some time after the election above referred to the board of aldermen of the town of Trenton ordered the construction of certain street improvements, consisting of sidewalks, on what is known as Pearl street. The character of the improvements was such as was authorized by the provisions of chapter 11, which had been adopted. The cost of construction was assessed, in accordance with those provisions, against the owners of property abutting on the street. More than 20 days after these assessments had been made the appellants, claiming to be the owners of property on Pearl street, prayed for and obtained a temporary injunction restraining the town of Trenton and its officers from the further prosecution of the street improvements theretofore entered upon. The petition contains the following, among other averments:

"That plaintiffs are the owners in fee simple of land in said town of Trenton situated on Pearl street thereof; that defendants are illegally and unjustly depredating upon the premises of plaintiff, and are now engaged in digging the same up preparatory to laying a cement walk on same at points not on the street line, but in such a way as to leave land of plaintiffs between the actual street and the sidewalk as it is about to be constructed; that defendants, unless enjoined and restrained, will continue to depredate upon said land and complete the building of such sidewalk, to the irreparable injury of plaintiffs and their said property."

The petition then proceeds to state that the defendants were claiming to act under the provisions of chapter 11, title 22; that the election ordered and the referendum vote taken were without constitutional authority and void. They further allege that no petition as required by law had been submitted asking for such an election, and for that reason the election was void.

On final hearing the temporary order theretofore granted was dissolved, and the perpetual injunction prayed for was refused. In their appeal from that judgment the appellants urge two grounds for a reversal. The first is that article 1016, by virtue of which the election was held, is in violation of the Constitution, which does not permit the Legislature to delegate any part of its legislative functions. The second is that the election was void because ordered and held without a petition theretofore having been filed asking for such an election.

[1] Of the second ground referred to it is sufficient to say that article 1016 is not susceptible of the construction placed upon it by the appellants. It does not provide, either expressly or by implication, that a petition is essential to authorize a submission of the question to the qualified voters of the city or town. That portion relating to a petition is merely designed to provide a method for compelling the proper authorities to submit the question to the voters when for any reason they have failed or refused to do so.

[2] The next question then is: Has the Legislature the power to authorize cities and towns and villages incorporated under the general laws of the state to determine for themselves whether or not they will adopt any provisions of the statute relating to the incorporation of cities, towns and villages not otherwise expressly made applicable?

Article 11, section 4, of the Constitution contains the following:

"Cities and towns having a population of five thousand or less may be chartered alone by general law."

Title 22, with its 17 chapters, contains the general laws enacted at different times by the Legislature in an effort to comply with that provision of the Constitution. The first 13 chapters of that title relate exclusively to cities and towns containing a population of 1,000 or over. Article 762, with which chapter 1 begins, provides:

"Any incorporated city, town or village in this state, containing one thousand inhabitants or over including those incorporated under chapter 14 of this title, or chapter 11 of title 18 of the Revised Statutes of 1895, and other laws general or special, may accept the provisions of this title relating to cities and towns, in lieu of any existing charter by a two-thirds vote of the council of such city, town or village," etc.

The article following is as follows:

"The provisions of this title shall not apply to any city, town or village until such provisions have been accepted by the council in accordance with the preceding article."

Chapter 11, which relates to street improvements, contains article 1016, which has been previously quoted, and which permits towns and villages that are unable or unwilling to avail themselves of all the provisions enacted for the benefit of cities and towns of 1,000 or more, to adopt the provisions of chapter 11 alone. The infirmity of the article assailed in this instance, if it has any, consists in the fact that it makes the application of the general law embraced in chapter 11 dependent upon the will of the people of a particular locality. The contention is that the Legislature alone has the power to say when, to whom, or to what conditions a law shall apply, or who shall be governed by its provisions. This objection, if tenable, will apply with equal force to article 1034, the only article now embraced in the statute which provides a method of procedure for becoming incorporated cities, towns, and villages under the general law; and would render unavailable all the general provisions of title 22 not otherwise specially applied. By the terms of the law providing for the incorporation of municipalities, such as cities, towns, and villages, the initial steps and the essentials required to become subject to any general incorporation law are matters to be determined by the people of the particular territory by a referendum vote. If it can be said that the objection would not apply to the original formation of the corporation because of the constitutional provision quoted, it may with propriety be said that it should not apply to those laws designed to enlarge or extend the corporate powers. These are also parts of the general law relating to the incorporation of cities and towns. If the Legislature, in the first instance, may permit the inhabitants of a given territory to determine for themselves whether they shall become incorporated and

be subject to the duties and liabilities incident to incorporation as prescribed by the laws relating thereto, there seems to be no good reason why the Legislature may not also provide a similar means for enlarging or extending the corporate powers. The article assailed is just as much a part of the general laws relating to the incorporation of cities and towns as any of the other provisions of title 22. In voting to adopt certain statutory provisions, the voters do not in reality adopt the law; they merely bring about a situation to which the law by its terms has been made applicable. The law is the finished product of the Legislature, and it only awaits the existence of the conditions to which by its terms it is made applicable in order to be enforced. We think the following authorities settle that proposition: Stanfield v. State, 83 Tex. 321, 18 S. W. 577; Johnson v. Martin, 75 Tex. 33, 12 S. W. 321; San Antonio v. Jones, 28 Tex. 31; Graham v. City of Greenville, 67 Tex. 62, 2 S. W. 742. To these may be added the cases collated in the notes of State v. Butler, 18 Ann. Cas. 489, and State v. Frear, 20 Ann. Cas. 633.

In Johnson v. Martin the controversy involved the right of the Legislature to authorize the commissioners' courts of the different counties to order an election for a public weigher. After referring to some constitutional provisions, the court said:

"The law as it stands was enacted by the Legislature in accordance with constitutional form, and as a law was complete by the legislative enactment. The commissioners' courts have no power to revise or modify the act in any respect. They merely have the right to put the law in force by having an election; to organize by calling an election for the officer, who is to execute the law as it came from the hands of the Legislature. It might be said that the law is to take effect upon the happening of a subsequent event; that is, the decision of the commissioners' courts that it is necessary in their respective counties. Such discretion to the council boards of subordinate branches or divisions of the government is not unusual and is not unconstitutional. It is allowed to them because in matters of local regulation it may be fairly supposed they are more competent to judge of their needs than a central authority. The Legislature cannot merely propose a law to be adopted for the people; but where there is affirmative legislation its enforcement in counties, districts or towns, when the law so provides, may be left to the option of such localities. * * * The privilege of the electors of a district to be affected by a law to say whether they will accept its provisions, the law giving them the right to accept or reject, is now generally permitted and regarded as constitutional."

In Stanfield v. State the court had occasion to pass upon the validity of that provision of the statute which authorized commissioners' courts to determine whether or not there should be held an election for a county superintendent. The authority was sustained, and the following argument was made:

"It will be seen that the act of the creation of the office was made to depend in each county upon the action of its county commissioners' court as to its taking effect there, and we are

not able to see any material distinction in regard to their constitutionality between the act that authorized the county commissioners' courts to bring the office into existence and the one that authorized it to abolish it. It has been said by this court in a general way that laws can only be made by the votes of the representatives of the people in their legislative capacity. State v. Swisher, 17 Tex. 448. There seems to be a well-recognized distinction in respect to the question under consideration between the laws affecting only the municipal subdivisions of the state and such as affect the state at large; and whatever differences of opinion there may be about the application of the rule to the general laws that affect alike the whole state, it seems to be well established that the maxim that the legislative power is not to be delegated and is not trenched upon when the legislation merely bestows upon the municipal organization of the state certain powers of local regulation. Cooley, Constitutional Limitation, p. 143; Werner v. City of Galveston [72 Tex. 22], 7 S. W. 726 [12 S. W. 159]. Our Constitution and statutes each provide for the adoption of laws in particular localities, according to and dependent upon the expressed will of the people to be affected, and such statutes have not in every instance been expressly directed by the Constitution. * * * A city containing one thousand inhabitants or over may by a vote of its council accept or reject the general incorporation law of this state for cities and towns. The inhabitants of the town or village may by vote accept or reject the incorporation act provided for them; and, having once incorporated such towns or villages may by their own vote, abolish the corporation, including the officers."

The latter part of the paragraph quoted would seem to be directly in point, and unquestioned authority for the action of the trial court, if that particular provision of the statute had been under consideration. But as the reference was only in the way of an illustration, it is persuasive only. But we think it is in line with the principle announced as controlling the case there under consideration.

[3] There is another reason, which was doubtless sufficient, to justify the court in refusing the writ of injunction, regardless of the validity of the statute assailed. The petition is undertaking to restrain the municipal authorities from constructing certain street improvements, not the assessment or collection of a tax. The conditions upon which they apparently rely for a right to maintain a suit of this character are the depredations, as they term the street improvement work, committed upon their land. The court in his findings of fact concludes from the evidence that the land upon which the street improvements were being made was a part of the public thoroughfare and had become such by limitation. It follows from this that no rights claimed by appellants were invaded, and for that reason they were not entitled to maintain a suit to enjoin the public officers from performing that character of work merely because they were exceeding their authority. In M., K. & T. Ry. Co. v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681, our Supreme Court says:

"The principle, as we understand it, is, that the courts have no power to enjoin the officers of a state from taking action under a statute claimed to be unconstitutional and deemed to be prejudicial to the complainants, unless the officers are about to do some act which, if not authorized by a valid law, constitutes an unlawful interference with their rights."

See, also, Caruthers v. Harnett, 67 Tex. 127, 2 S. W. 523.

For reasons stated, the judgment of the district court is affirmed.